[No. 2838.]

Joe Miles v. The State.

1. Charge of the Court—Practice.—Though, as the better practice, the charge of the court should remind the jury that its findings must be predicated alone upon the evidence adduced, a charge that "if you believe that the offense was committed in this county and State, and if you further believe that the defendant was the party committing the same, you will convict," is not objectionable in that it authorizes the jury to convict upon a belief other than that which arises from the evidence. See the opinion *in extenso* on the question.

2. Practice—Continuance—New Trial.—See the statement of the case for evidence set out in an application for a continuance which, when considered in connection with the evidence adduced on the trial, entitled the defendant to a new trial.

Appeal from the District Court of Fayette. Tried below before the Hon. L. W. Moore.

The indictment charged the appellant with the theft of one head of neat cattle, the property of W. J. Hildebrand, in Fayette county, Texas, on the twenty-third day of April, 1882. A verdict of guilty assessed his punishment at a term of two years in the penitentiary.

W. J. Hildebrand, of Fayette county, was the first witness for the State. He testified, in substance, that on or about the eighth day of April, 1882, he purchased of Mr. Summers a cow and two yearlings. One of these yearlings was a red heifer, and is the animal involved in this proceeding. These animals were pointed out to the witness by Mr. Summers, at the latter's pen. Witness left them with Summers until he should call for them. On the twenty-third day of April, 1882, the witness was informed that this red heifer yearling had been taken from the range, and was then in Lavaca county. The witness, with Mr. Fred. Summers, went to Lavaca county, and found the animal staked out near the residence of Mr. W. H. Morrow. He could identify the animal only by Summers's mark and brand. The mark, however, which was originally a hole in one ear and two splits in the other, had been recently altered by cutting out the piece between the two splits. Witness took the animal home. The

range of Summers's cattle was in Fayette county. Witness gave no one permission to take this animal.

Mitchell Pleasant testified, for the State, that about the time alleged in the indictment, he found a red heifer yearling staked out in an open space surrounded by a thicket, about one hundred and fifty yards from the Navidad, in Lavaca county. This was back of Bryant Warren's field, about five hundred yards from his house, and about a half a mile from the house of J. S. Miles, the defendant's father, where the defendant lived. The animal was staked on either the land of Warren or that of Simpson. Witness went up to Bryant Warren's house and told him about the discovery, and he and Warren returned to the yearling. From there the witness went home, and Warren went to McKinnon's to tell him about it. Witness could not decipher the brand on the animal. The mark had been a hole in one ear and two splits in the other. The piece between the two splits had been recently cut out.

S. McKinnon testified, for the State, that about the time mentioned in the indictment Bryant Warren notified him that there was a yearling, such as described by previous witnesses, staked out in the Navidad bottom. He went with Warren to the place indicated, and found the yearling, a red heifer with an undistinguishable brand, and marked as described, with the alteration described. She was staked out in a thicket, about a half a mile from where the defendant lived. Others lived as near the place where the heifer was staked as Miles did. Witness, Warren and Morrow, and others, guarded the animal that night, and all, save Warren, left at breakfast time next morning. While at breakfast, the witness was informed that the animal had been moved up the creek. The witness went to look for the animal again, and found it staked a short distance from where he left it that morning. The yearling was then taken to Morrow's, and afterwards was delivered to Hildebrand and Summers.

W. H. Morrow testified, for the State, that he went to where the yearling was staked on the evening it was found, and the next day he went with McKinnon to where it had been moved, from which place it was taken to witness's house and afterwards delivered to Hildebrand and Summers. He saw where the animal had been led into the creek for water.

Fred. Summers testified, for the State, that he was present in the early part of February, 1882, when W. J. Hildebrand pur-

chased from his, witness's, father, in Fayette county, a cow and two yearlings, one a steer and the other a red heifer yearling. The animals were pointed out to Hildebrand, who left them at Summers's pen because he had no water in his pasture. The heifer yearling ranged with the cattle of the witness's father in Fayette county, and came up with them at night. Some days afterwards the yearling was missed, and five days later it was ascertained that she was in Lavaca county. Witness went with Hildebrand to Lavaca county and got the animal from Morrow. It was the same yearling witness's father had sold Hildebrand, was branded H S R, and was marked as described by previous witnesses, which mark had been altered in the manner described.

Henry Summers testified, for the State, that he sold the animal in question to Hildebrand. It disappeared as described, and was, in manner detailed, recovered. He gave no one permission to take the animal.

Bryant Warren testified, for the State, that when he was notified of the discovery of the animal staked out as described by the witness Mitchell, he notified McKinnon and Morrow, and with them guarded the animal that evening and night. Next morning all of the party save himself went to breakfast. Shortly after they left, and about fifteen minutes after sunrise, witness saw Joe Miles, the defendant, ride up to the yearling, and after looking carefully around, untie it and lead it to water up the creek. Witness then went and informed McKinnon, and returned with McKinnon and found the yearling staked a short distance from where it was first staked. The witness was within thirty or forty steps of Miles when Miles untied the yearling.

This witness admitted that, on the morning that the yearling was moved, he told Morrow and McKinnon that the party who moved it had a handkerchief over his face, and that he could not tell who the party was. He made this statement, he said, because he was afraid for it to be known that he knew who the party was. He afterwards told Morrow who the party was. Morrow, McKinnon and other parties were acting with the witness in the effort to discover the party who staked the yearling. Witness admitted that he told M. J. Duke that the party was so disguised with a handkerchief that he could not recognize him, but denied that he told Duke that it was not Joe Miles. The defendant's father was present at this time. Witness afterwards told Colonel W. F. Upton the same thing in Schulenburg,

but did so because he "did not want to give himself away to everybody."

W. F. Upton testified, for the defense, that he had known Bryant Warren for many years, and had also known the defendant intimately. This was the first charge he had ever heard against the honesty of the defendant. Warren told the witness in Schulenburg that the man he saw remove the yearling had a handkerchief over his face, and that he, Warren, did not recognize him.

M. J. Duke, uncle of the defendant, testified that he and the defendant's father went to Warren on the day after the yearling was removed from where it was staked, and asked the witness Warren who the party removing the animal was. Warren said that he did not know; that the party had a handkerchief over his face, and he could not tell whether or not it was the defendant.

W. H. Morrow, for the defense, testified that he and McKinnon were the first to get to Bryant Warren after the yearling was moved. Warren said that the man who moved the yearling was so disguised in a handkerchief that he could not recognize him. Witness said to him: "Bryant, you have lived in this neighborhood too long, and know the people too well, not to know the people. You are bound to know who that man was." Bryant then said that the man "looked like Joe Miles," or that he "thought it was Joe Miles." The witness had known the defendant for many years, and had never before known his honesty impeached. He had known Bryant Warren for many years. Warren's reputation in the neighborhood was that of a good freedman. He, Warren, owned a farm of his own.

The motion for a continuance set up that the defendant could not safely go to trial "on account of the absence of the following named witnesses, to wit: J. S. Miles, who is a resident of Lavaca county, Texas, for whom he caused an attachment to issue to Lavaca county, Texas, on the twelfth day of January, 1883, which attachment was executed on said J. S. Miles on the twenty-third day of March, 1883, by A. J. Smothers, sheriff of Lavaca county, by taking his bond now on file in this court, conditioned for his appearance at this term of the court to testify for the defendant; that the witness is now absent on account of sickness which renders him unable to attend upon court, and he presents herewith the certificate of a practicing physician to that effect. That he expects to prove by the said witness that

the defendant was a minor and lived with him at the time the animal described in the indictment was taken, and that the defendant was at his house on the night before it is claimed he was seen to remove the yearling from where it was staked; and that the defendant was with the witness at his pen and about the house from daylight until eight o'clock on said morning, and could not have been the party who removed the yearling. The defendant further shows that the State attempts to connect him with the theft of the animal in question only by one witness, who claims to have seen the defendant remove the yearling from the place where it was found staked in Lavaca county, about a half mile from the said J. S. Miles's house, when the sun was about a quarter of an hour high on the morning stated, and that the State can connect the defendant with the possession and theft of said animal only by this witness, as he is informed and believes.

"Defendant further shows that Frank Sparks is absent, for whom he caused an attachment to issue on January 12, 1883, which attachment was returned to this court and filed among the papers of this cause on May 15, 1883, not executed, for the reason that the witness lived in Colorado county; that the defendant, at the date of the issuance of said attachment and until last Tuesday, believed that said witness resided in Wharton county; that he then caused an attachment to be issued and forwarded in due course of mail to Colorado county; that he expects to prove by the said witness that, on the night before mentioned, he, the said witness, staid all night at the house of J. S. Miles with the defendant, and that on the morning on which Bryant Warren claims to have seen the defendant remove the said yearling, he, the witness Sparks, was with the defendant continuously from daylight until two hours after sunrise, and that during that time the defendant could not have gone off a half a mile to where said yearling was said to have been staked.

"Also, on account of the absence of J. W. Schooler, who is, and was on January 12, 1883, a citizen of Hamilton county, Texas, for whom he caused an attachment to issue and be forwarded to Hamilton county, Texas, by due course of mail at said date, which attachment was returned not executed, and filed among the papers of this cause, May 16, 1883; that since said date the time has not been long enough to have sent an attachment to said county and had it executed and returned; that he expects to prove by said witness that he was with this de-

fendant at a fish-fry on the day above referred to, from about eight o'clock in the morning until the evening of the same day, and that defendant could not have been where the yearling in question was staked during said time; also, that the said yearling ranged in Lavaca county, more than four hundred yards from the Fayette county line, at times preceding said date.

"Defendant has used due diligence to procure the attendance of said witnesses upon this term of the court, as before shown; their evidence is material; they are not absent by the procurement or consent of the defendant; this application is not made for delay; there is no reasonable expectation that the attendance of the said witnesses can be secured during the present term of this court by a postponement of the trial to a future day thereof; wherefore, the premises considered," etc.

This application for a continuance, subscribed and sworn to as required by law, was supported by the following certificate:

"OAKLAND, TEXAS, May 21, 1883.
"*Hon. L. W. Moore, District Judge, Fayette County, Texas:*
"DEAR SIR:—This is to certify that Mr. J. S. Miles is undergoing medical treatment from myself, and is physically unable to attend court. My orders are for him to remain in doors and take medicine for at least five or six days.
"Very respectfully,
"Yours, etc.,
"J. DUFF BROWN, JR., M. D."

The motion for new trial raised the questions discussed in the opinion.

*Ellis & Patton,* for the appellant, counter to the doctrine announced in the first head-note of this report, cited *Waddell* v. *The State,* 37 Texas, 354; *Parker* v. *Fisher,* 39 Illinois, 170.

*J. H. Burts,* Assistant Attorney General, for the State.

WHITE, PRESIDING JUDGE. In the charge of the court the following instruction occurs: "If you believe the offense was committed, as alleged, in this county and State, and if you further believe the defendant was the party committing the same, you will convict." It is complained that this charge is errone-

ous in that it permits the jury to convict upon their belief, independent of the evidence; in other words, that the charge does not restrict the jury, as it should do, in any belief or conclusion they might form to such only as is generated by or flows directly from the evidence adduced on the trial as testified to by the witnesses before them. We are cited to the cases of *Parker* v. *Fisher et al.*, 39 Illinois, 164, where it was held that "an instruction which does not require the jury to 'believe from the evidence' the facts assumed in it is objectionable, even if the law in the instruction is correctly stated." Thompson, in his work on "Charging the Jury," speaking of the relation of the charge to the evidence, says: "The judge opens any hypothetical statement with the formal words 'if the jury believe from the evidence.' To use only the words 'if the jury believe,' without conveying to their minds that they are to found their belief on the evidence, is an objectionable way of giving an instruction; but, as juries are supposed to have some small trace of sense, there is a presumption that they know that they are to find from the evidence, and accordingly it is not necessary to repeat this expression at every turn in the charge." ("Charging the Jury," sec. 62, p. 88; "Instructions to Juries," Sackett, page 23, section 26.)

The oath administered to the jurors when they have been selected is that they "will a true verdict render according to the law and the evidence" (Code Crim. Proc., Art. 657), and it is but reasonable to presume that they, if suitable at all for the service required of them, must understand the nature and obligation of this oath. Still the better practice is the uniform one to remind them that their findings must be predicated alone upon their belief of the evidence testified to by the witnesses in the case.

We have given the record in this case a most careful consideration, and we are not satisfied that the conviction should stand. When we consider the fact that the conviction rests alone upon the uncorroborated evidence of a single witness, and that, too, upon one whose testimony, to say the least of it, suspicion was cast by the proof of his own contradictory and conflicting statements upon more than one occasion and to different parties, we are inclined to the opinion that the evidence sought from the absent witnesses, as shown in defendant's application for continuance, would have great weight in determining the question of his identity at the time and place of the alleged of-

fense, and that under the peculiar circumstances of this case a new trial should have been granted.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 13, 1883.